STATE OF NORTH CAROLINA v. ADRIAN DOMINIC WATKINS, DEFENDANT

No. COA07-1213

(Filed 3 February 2009)

## 1. Evidence— prior trial attorney's testimony—alleged privileged communications—communication made for purpose of being conveyed by attorney to others

The trial court did not err in a second-degree murder and first-degree burglary case by admitting the testimony of defendant's prior trial counsel at the hearing on defendant's motion to withdraw his guilty plea even though defendant contends it violated his attorney-client privilege because: (1) our Supreme Court has noted that if it appears that a communication was not regarded as confidential or that the communication was made for the purpose of being conveyed by the attorney to others, the communication is not privileged; (2) defendant provided the 15 November 2004 information to the attorney precisely for the purpose of conveying it to the prosecutor, and thus that conversation was not a confidential communication to which the attorney-client privilege attached; and (3) in regard to the 30 January 2004 conversation, even assuming without deciding that the conversation was privileged and that defendant did not waive the privilege, defendant failed to demonstrate that he was prejudiced by the disclosure.

## 2. Criminal Law— refusal to allow withdrawal of guilty plea— delay in time—prejudice to State

The trial court did not err in a second-degree murder and first-degree burglary case by refusing to allow defendant to withdraw his guilty plea because: (1) in regard to whether defendant maintained his innocence, defendant's statement that "I ain't completely innocent, but I ain't completely guilty" was equivocal;

STATE v. WATKINS

[195 N.C. App. 215 (2009)]

(2) although defendant contends he never gave his prior attorney the information contained in the 24 November 2004 proffer of testimony, defendant's argument relying on his own testimony is foreclosed by the trial court's unchallenged finding that defendant provided the attorney with the answers to the prosecutor's questions on 15 November 2004; (3) the State's forecast of evidence included defendant's proposed testimony submitted to the prosecutor, evidence of consistent statements and proposed testimony of his codefendants, and evidence of a detective's investigation that implicated defendant; (4) defendant's delay in requesting the withdrawal of his plea far exceeded the lapse in time in other cases in which our appellate courts have upheld denials of motions to withdraw; (5) despite defendant's claims to the contrary, the trial court found there was absolutely no indication that defendant did not fully understand the consequences of his plea; (6) the multiple discussions and review of the plea bargain over several months indicated the absence of haste or coercion in defendant's original decision to plead guilty; and (7) the State demonstrated that its case would be prejudiced if defendant were allowed to withdraw his guilty plea as all the codefendants had already been sentenced and thus could not be relied upon to testify against defendant at trial.

**3. Constitutional Law; Sentencing— ex post facto law— change in classification of prior conviction—prior record level**

The trial court did not err in a second-degree murder and first-degree burglary case by calculating defendant's prior record level by treating a prior conviction for a sale of cocaine as a Class H felony as it was classified at the time of sentencing rather than as a Class G Felony as it was classified at the time of the offense, resulting in defendant's being a Level IV rather than a Level III offender, because: (1) contrary to defendant's argument, there was no ambiguity in the statute which provides that the classification of an offense at the time of sentencing should be used in calculating the prior record level, N.C.G.S. § 15A-1340.14(c); and (2) the constitutional prohibition on ex post facto laws was not implicated by application of N.C.G.S. § 15A-1340.14(c) when defendant's increased sentence due to the change in the classification of his prior conviction served only to enhance his punishment for the present offenses and not to punish defendant for his prior conviction.

STATE v. WATKINS

[195 N.C. App. 215 (2009)]

Appeal by defendant from order and judgments entered 2 April 2007 by Judge Steve A. Balog in Guilford County Superior Court. Heard in the Court of Appeals 15 April 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Grady L. Balentine, Jr., for the State.*

*William D. Auman for defendant-appellant.*

GEER, Judge.

Defendant Adrian Dominic Watkins appeals from the trial court's order denying his motion to withdraw his guilty plea and from judgments entered pursuant to that plea for second degree murder and first degree burglary. The central issue in this appeal is whether the trial court should have excluded, based on the attorney-client privilege, portions of defendant's former attorney's testimony at the hearing on his motion to withdraw his plea. Based upon our review of the record, we have concluded that certain portions of the challenged testimony related to unprivileged communications, while, with respect to the remaining testimony, defendant has failed to demonstrate prejudice even if the disclosed communications were privileged. Moreover, we hold that the trial court, based on the evidence before it, did not err in denying defendant's motion to withdraw his plea. Accordingly, we affirm.

## Facts

In its order denying defendant's motion to withdraw his guilty plea, the trial court found the following facts.[1] On 15 March 2004, defendant was indicted for first degree murder and first degree burglary stemming from a home invasion on 15 December 2003 by four men that resulted in the death of Anthony Graham. Mark Hayes, an attorney certified to represent defendants in potential capital cases, was appointed as defendant's primary counsel.

After the prosecutor provided discovery to defendant, Hayes and defendant reviewed the discovery and discussed possible plea bargains. The discovery received from the prosecutor included confessions and proffers of testimony from defendant's co-defendants. Having confirmed with the prosecutor that co-defendants Robert Blair and Darius Rutledge had already confessed, Hayes told defendant that he believed that they were pursuing plea bargains and would

---

1. Defendant has not assigned error to these findings, and they are, therefore, binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

testify that defendant was the "ringleader" if defendant insisted on going to trial. Hayes then discussed with defendant whether Hayes should attempt to negotiate a plea bargain with the prosecutor.

The prosecutor subsequently submitted a set of 12 questions for defendant to answer as a proffer of expected testimony should defendant testify against his co-defendants. In a letter dated 24 November 2004, Hayes provided the prosecutor with defendant's proffer of proposed testimony.

All four defendants involved in the home invasion had been charged with first degree murder. While the other co-defendants had also been charged with either armed robbery or attempted armed robbery, defendant was charged with first degree burglary. By 28 March 2005, all of the co-defendants had pled guilty and agreed to testify. Concerned that the co-defendants would turn on defendant, Hayes went to the jail and discussed with defendant the plea agreement offered by the prosecutor. Under the terms of the offer, defendant would serve 220 to 273 months on a reduced charge of second degree murder followed by 94 to 122 months for first degree burglary. Defendant would have to testify truthfully regarding the offenses, and the State would dismiss two unrelated charges of possession with intent to sell cocaine. Defendant agreed to accept the plea offer.

On 29 March 2005, defendant and Hayes appeared in Guilford County Superior Court for entry of his guilty plea. After the trial judge reviewed with defendant the terms of the plea agreement, and the prosecutor summarized the factual basis for the plea, defendant announced that he no longer wanted to accept the plea arrangement. During defendant's exchange with the trial judge, defendant stated: "I ain't completely innocent, but I ain't completely guilty."

After defendant rejected the plea, Hayes researched all of the possible outcomes that could result if defendant continued to refuse the offer and the case went to trial. On 30 March 2005, Hayes discussed with defendant the possible charges and sentences to which defendant would be exposed. At the end of the hour-long meeting, defendant told Hayes that he wanted to accept the prosecutor's offer.

On 31 March 2005, defendant returned to court with Hayes, and the trial judge entered defendant's guilty plea. The trial judge found that there was a factual basis for the plea; that defendant was satisfied with his legal counsel; that defendant was competent to stand trial; and that the plea was defendant's informed choice and entered

STATE v. WATKINS

[195 N.C. App. 215 (2009)]

into freely, voluntarily, and understandingly. The trial judge accepted defendant's plea and continued judgment.

Beginning on 21 June 2005, defendant expressed doubts about his plea agreement. Over several months defendant told Hayes that he no longer wanted to accept the deal as he considered a 26-year sentence "just too much time." In response, Hayes reviewed with defendant the favorable and unfavorable consequences of going through with the deal or withdrawing his plea.

Co-defendant Fanton Cummings had originally pled guilty pursuant to a plea agreement, but subsequently withdrew his plea and was tried. During Cummings' trial, in April 2006, the question arose as to whether defendant was willing to testify as required by his plea agreement. When asked in open court whether he wished to testify, defendant stated that he would testify. Neither the State nor Cummings, however, called defendant to testify. Co-defendants Blair and Rutledge testified, and Cummings was convicted of Graham's murder.

The State prayed for judgment in connection with defendant's guilty plea on 30 May 2006. At that time, Hayes reported to the trial court that defendant wanted to withdraw his plea. Hayes also sought to withdraw as defendant's counsel and moved to have substitute counsel appointed to file the motion to withdraw defendant's plea. The trial court granted Hayes' motion to withdraw as counsel and appointed attorney Craig Blitzer to represent defendant.

Defendant's motion to withdraw his plea was heard on 27 March 2007. In support of his motion, defendant testified that on 30 May 2005, the day after he first rejected the plea, Hayes visited him in jail and told him that if he did not accept the offer, he would be subject to being indicted on armed robbery and violent habitual felon charges, which could result in more active time than the proposed plea. Based on that discussion, defendant chose to enter his plea on 31 March 2005. Defendant testified that, at some point later, he called Hayes and told him that he wanted to withdraw his guilty plea. He produced a letter at the hearing dated 10 May 2005 and addressed to Hayes that expressed his desire to withdraw his plea. Defendant stated that Hayes told him that "if you don't want to go through with the plea all you've got to do when [Cummings'] trial come[s] up [is] refuse to testify." Defendant testified that he later wrote Hayes and asked him to file paperwork to withdraw his appeal and get a trial date.

STATE v. WATKINS

[195 N.C. App. 215 (2009)]

On cross-examination, defendant stated that he did not know where Hayes had obtained the information contained in the 24 November 2004 proffer of expected testimony. When the prosecutor attempted to ask defendant what information he provided Hayes, defense counsel objected on the grounds of attorney-client privilege, asserting that since defendant did not testify regarding the letter during direct-examination, defendant could not be questioned about it on cross-examination. The trial court overruled the objection, reasoning that defendant had waived the privilege. The trial court stated: "If [defendant]'s going to testify about things his lawyer told him, he's going to have to answer questions about their discussions and meetings."

When the State called Hayes to testify, defense counsel renewed his objection based on attorney-client privilege. The trial court, however, ruled that "[Hayes] may answer questions about his relationship with the defendant and his conversations with the defendant." The State offered into evidence the proffer of defendant's proposed testimony, and Hayes testified that defendant had given him the information contained in the letter. Hayes explained that he visited defendant in jail with the prosecutor's 12 questions, defendant gave him the answers to the questions, Hayes typed up the answers in the form of a letter, he reviewed the letter with defendant, and he then mailed the letter to the prosecutor.

The State also asked Hayes about what defendant had told him during a conversation on 30 January 2004 about defendant's involvement in the crimes. Over defendant's objection, Hayes described in detail defendant's account of what occurred during the home invasion, including defendant's specific role.

Hayes also testified that his notes indicated that defendant did not express reluctance about whether to go through with the plea agreement until 21 June 2005. Hayes reported that defendant would waver back and forth, but that he never actually instructed Hayes to move to withdraw his guilty plea. Hayes explained that defendant repeatedly expressed concern about the length of his sentences under the plea deal, but that after discussing the consequences of withdrawing the plea, defendant would acknowledge that it was the best deal he could get under the circumstances. Hayes testified that during these discussions with defendant, he would ask defendant about filing a motion to withdraw, but that each time, defendant would tell him not to file the motion. Hayes also stated

that he had never seen the 10 May 2005 letter that defendant testi-
fied he mailed to Hayes.

The only other witness to testify at the hearing was Detec-
tive Michael Conwell. Detective Conwell testified that the initial
investigation indicated that four individuals were involved in a home
invasion that resulted in Graham's being shot in the back of the head
with a .12 gauge shotgun. When the crime scene was searched, a
cell phone was found underneath a window, and "the window had
the appearance of someone having made a very hasty exit through
it . . . ." Detective Conwell called the last number dialed and asked the
woman who answered if she knew whose number it was. The woman
said that the cell phone belonged to someone named Dominic
Watkins. When the police first interviewed Natasha Mack, who had
participated in the planning of the robbery, she stated that several
men had come to her house on the day of the home invasion, and one
of them had red dreadlocks. When Detective Conwell went to the jail
to question defendant, who had been arrested on an unrelated matter,
defendant had red dreadlocks. Detective Conwell also testified that
co-defendants Blair and Rutledge gave statements after being
arrested in which they asserted that defendant was involved in the
home invasion, that defendant had rented the U-Haul truck used in
the robbery, and that defendant was carrying a .40 caliber handgun
during the crime.

The trial court entered its order denying defendant's motion
to withdraw his guilty plea on 2 April 2007. In the order, the trial
court made findings on each of the factors set out in *State v. Handy*,
326 N.C. 532, 539, 391 S.E.2d 159, 163 (1990), for determining
whether a motion to withdraw a plea should be allowed. Specifically,
the court found, based on defendant's statements in court and his
proffer of proposed testimony, that defendant had not continuously
maintained his innocence throughout the proceedings. Based on
the detective's testimony and the statements of co-defendants
Blair and Rutledge, which dovetailed with defendant's proffered tes-
timony, the court found that the State's proffer of evidence against
defendant was "far stronger than normally heard in similar cases."
The court further found that defendant had "waffled" for almost
two years, "[a] lengthy amount of time" between entry of his plea
and his motion to withdraw it. Finally, the court found that
"defendant had extremely competent and capable counsel in
Hayes . . . and later Blitzer"; that "[t]here [wa]s absolutely no indi-
cation that defendant did not fully understand the consequences

of his plea"; and that there was no evidence of haste, coercion, or confusion.

Based on these findings, the trial court concluded that defendant had not demonstrated a "fair and just reason to allow the defendant to withdraw his guilty plea." In addition, the trial court found that even if defendant had met his burden, the State had shown concrete prejudice to its case if defendant were allowed to withdraw his plea in that all co-defendants had been sentenced and thus could not be compelled to testify against defendant at trial. The trial court, therefore, denied defendant's motion.

Consistent with the plea agreement, the trial court sentenced defendant to a presumptive-range sentence of 220 to 273 months imprisonment for the second degree murder charge, followed by a presumptive-range sentence of 94 to 122 months imprisonment for the first degree burglary charge. Defendant timely appealed to this Court.

I

[1] Defendant first challenges the admission of Hayes' testimony at the hearing on his motion to withdraw his plea. Defendant maintains that the testimony violated his attorney-client privilege. The attorney-client privilege applies to a particular communication if:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981). The person asserting the privilege bears the burden of establishing each of the five elements. *In re Investigation of Death of Eric Miller*, 357 N.C. 316, 336, 584 S.E.2d 772, 787 (2003). "If any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged." *Id.* at 335, 584 S.E.2d at 786.

Defendant objected at the hearing to Hayes testifying at all on the basis that his testimony would concern matters communicated during the course of that representation. On appeal, defendant limits his argument to those portions of Hayes' testimony regarding the "intri-

cate details of the crime itself that were allegedly relayed to him by the defendant," including: (1) a 15 November 2004 meeting during which defendant allegedly provided Hayes with his proposed testimony to be relayed to the prosecutor; and (2) a 30 January 2004 conversation Hayes had with defendant in which defendant discussed his participation in the crimes.

With respect to the 15 November 2004 discussion between defendant and Hayes, the trial court found:

> Hayes discussed with defendant seeking a plea offer for defendant from the prosecutor. The prosecutor had submitted twelve questions to Hayes. On November 15, 2004 at the jail Hayes obtained from defendant answers to these questions. Hayes then put these answers into the form of a letter to the prosecutor and returned to the jail to review the draft with the defendant. Defendant ratified the letter as accurate. Hayes then sent the letter dated November 24, 2004 to assistant district attorney Kelly Thompson. This letter was a written proffer of potential testimony that defendant could offer at a trial of any co-defendant(s) if a satisfactory plea arrangement were agreed upon.

As defendant failed to assign error to this finding, it is binding on appeal. *State v. Campbell*, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005), *cert. denied*, 547 U.S. 1073, 164 L. Ed. 2d 523, 126 S. Ct. 1773 (2006).

The trial court's finding establishes that defendant disclosed the information to Hayes on 15 November 2004 so that Hayes could then provide it to the prosecutor in an attempt to negotiate a plea arrangement. As our Supreme Court pointed out in *Miller*, 357 N.C. at 335, 584 S.E.2d at 786, "if it appears that a communication was not regarded as confidential or that the communication was made for the purpose of being conveyed by the attorney to others, the communication is not privileged." Thus, because defendant provided the 15 November 2004 information to Hayes precisely for the purpose of conveying it to the prosecutor, that conversation was not a "confidential" communication to which the attorney-client privilege attached. *See State v. McIntosh*, 336 N.C. 517, 524, 444 S.E.2d 438, 442 (1994) (holding that attorney-client privilege did not apply to attorney's statements to police as defendant had "necessarily authorized" counsel to "inform" police that defendant wanted to surrender).

Turning to the admission of Hayes' testimony about his 30 January 2004 conversation with defendant, even assuming—without deciding—that the conversation was privileged and that defendant

did not waive the privilege, defendant has failed to demonstrate that he was prejudiced by the disclosure. N.C. Gen. Stat. § 15A-1443(a) (2007) provides that "[a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." In this appeal, therefore, defendant must demonstrate that if Hayes' testimony regarding the 30 January 2004 conversation had not been admitted, there is a reasonable possibility that the trial court would have granted defendant's motion to withdraw his guilty plea. We hold that defendant cannot make the necessary showing.

The testimony regarding the 30 January 2004 conversation related to the strength of the State's proffer of evidence regarding defendant's guilt. Apart from that conversation, the trial court had before it the 24 November 2004 letter detailing defendant's proposed testimony, which establishes defendant's guilt of murder and burglary,[2] testimony regarding the confessions of co-defendants substantially implicating defendant, and evidence of defendant's cell phone being present at the crime scene under a broken window. In light of this evidence, we conclude that there is no reasonable possibility that the trial court would have granted defendant's motion in the absence of the testimony of the 30 January 2004 attorney-client conference.

II

**[2]** Defendant next claims that the trial court erred in refusing to allow him to withdraw his guilty plea. Much of defendant's argument on appeal hinges on his contentions regarding the underlying facts. Since, however, defendant has not assigned error to the trial court's findings of fact, they are binding on appeal notwithstanding the presence of contrary evidence in the record. *Campbell*, 359 N.C. at 662, 617 S.E.2d at 13. The trial court's findings must nevertheless support its conclusions of law. *Id.*

Where, as here, " 'the defendant seeks to withdraw his guilty plea before sentenc[ing], he is generally accorded that right if he can show any fair and just reason.' " *Handy*, 326 N.C. at 536, 391 S.E.2d at 161 (quoting *State v. Olish*, 164 W. Va. 712, 715, 266 S.E.2d

---

2. Defendant does not argue on appeal that evidence of his proposed testimony was inadmissible under N.C.R. Evid. 410 as discussions in connection with plea negotiations. Nothing in this opinion, therefore, should be read as addressing that issue.

·134, 136 (1980)). The defendant bears the burden of proving that the motion to withdraw the guilty plea is "supported by some 'fair and just reason.'" *State v. Robinson*, 177 N.C. App. 225, 229, 628 S.E.2d 252, 255 (2006) (quoting *State v. Meyer*, 330 N.C. 738, 743, 412 S.E.2d 339, 342 (1992)). In evaluating whether the defendant has demonstrated a fair and just reason for withdrawing his or her plea, courts must consider the following factors:

> "[1] whether the defendant has asserted legal innocence, [2] the strength of the State's proffer of evidence, [3] the length of time between entry of the guilty plea and the desire to change it, [4] and whether the accused has had competent counsel at all relevant times[,] [5] [m]isunderstanding of the consequences of a guilty plea, [6] hasty entry, [7] confusion, and [8] coercion are also factors for consideration."

*Id.* (quoting *Handy*, 326 N.C. at 539, 391 S.E.2d at 163).

If the defendant establishes a fair and just reason for withdrawal of his plea, "[t]he State may refute the [defendant]'s showing by evidence of concrete prejudice to its case by reason of the withdrawal of the plea." *Handy*, 326 N.C. at 539, 391 S.E.2d at 163. This Court "review[s] the record independent of the trial court's action [to] determine, 'considering the reasons given by the defendant and any prejudice to the State, if it would be fair and just to allow the motion to withdraw.'" *State v. Graham*, 122 N.C. App. 635, 637, 471 S.E.2d 100, 101 (1996) (quoting *State v. Marshburn*, 109 N.C. App. 105, 108, 425 S.E.2d 715, 718 (1993)).

As to whether defendant maintained his innocence, defendant points to a 1 April 2007 letter defendant sent to the trial court, in which he states: "First and foremost I would like to proclaim my innocence and wishes to have a(n) trial." On the other hand, the trial court found in its order that defendant had admitted on the record two years earlier, during the 29 March 2005 hearing: "I ain't completely innocent, but I ain't completely guilty."

We have previously held that statements less equivocal than defendant's were insufficient assertions of innocence under *Handy*. In *Graham*, 122 N.C. App. at 637, 471 S.E.2d at 102, the defendant stated that "he 'always felt that he was not guilty. . . .'" In concluding that the defendant in *Graham* had failed to show a fair and just reason for withdrawing his guilty plea, we held that the defendant's statement was not a "concrete assertion of innocence" under *Handy*. *Id.* Similarly, in *State v. Davis*, 150 N.C. App. 205, 207, 562 S.E.2d 590, 592

(2002), we held that the defendant had not made a definitive assertion of innocence when he answered "No, sir" to defense counsel's question: "Do you feel like you're guilty of second degree murder?" In this case, defendant's statement "I ain't completely innocent, but I ain't completely guilty" is even more equivocal regarding defendant's innocence than the statements made in *Graham* and *Davis*.

In support of his position that he has always maintained his innocence, defendant denies that he ever gave Hayes the information contained in the 24 November 2004 proffer of testimony. Defendant's argument relying on his own testimony is foreclosed by the trial court's unchallenged finding that defendant provided Hayes with the answers to the prosecutor's questions on 15 November 2004.

As for the strength of the State's proffer of evidence in support of the plea, defendant maintains that the State relied primarily on Hayes' testimony divulging confidential communications protected by the attorney-client privilege. Defendant argues that when Hayes' testimony is excluded, the State's evidence against him is weak. To the contrary, the State's forecast included defendant's proposed testimony submitted to the prosecutor, evidence of consistent statements and proposed testimony of his co-defendants, and evidence of Detective Conwell's investigation that implicated defendant.

With respect to the length of time between the entry of the plea and defendant's expression of a desire to withdraw the plea, defendant asserts that he began asking Hayes to move to withdraw his plea within six weeks of entering his plea on 31 March 2005, as evidenced by his 10 May 2005 letter to Hayes. The trial court, however, found in a finding not assigned as error:

> Not until June 21, 2005 did defendant express any second thoughts about his guilty plea. For several months thereafter the defendant waffled about his guilty plea. Not until April, 2006, did he tell Hayes that he definitely wanted to withdraw his plea. Even after having new counsel appointed to pursue a motion, however, he did not file such a motion until March 27, 2007, preserving his option to waffle again and rely on his plea arrangement. A lengthy amount of time passed before defendant stated a definite desire to withdraw his guilty plea.

Defendant's delay in this case far exceeds the lapse in time in other cases in which our appellate courts have upheld denials of motions to withdraw. *See, e.g., Meyer*, 330 N.C. at 744, 412 S.E.2d at 343 (concluding three and a half month period weighed against allowing with-

drawal); *Robinson*, 177 N.C. App. at 230, 628 S.E.2d at 255 (same); *Graham*, 122 N.C. App. at 637, 471 S.E.2d at 101-02 (denying defendant's motion to withdraw filed five weeks after entry of plea).

Defendant also argues that the evidence relating to whether Hayes provided competent representation weighs in favor of allowing him to withdraw his plea. The trial court, however, found that

> [t]here is no doubt that defendant had extremely competent and capable counsel in Hayes and Driver[3] and later Blitzer. Hayes fully explained and discussed all pertinent matters with defendant for defendant to be able to make an informed decision about his plea arrangement both before it was reached and subsequent thereto as defendant waffled in his view of whether the length of sentence was too long or the best he could do under the circumstance.

Despite the fact that defendant points to his own testimony in which he stated that Hayes provided him with incorrect information about whether he qualified as a violent habitual felon and whether his refusal to testify against his co-defendants would automatically void his plea agreement, the trial court made uncontested findings of fact contrary to this testimony. Moreover, although defendant claims that he misunderstood the consequences of his guilty plea as he was misinformed by Hayes, the trial court found that "[t]here is absolutely no indication that defendant did not fully understand the consequences of his plea. He knew what he was pleading guilty to, what his sentences would be, and what charges would be dismissed."

Defendant points to his "swift change of heart" in his 10 May 2005 letter to Hayes as indicative of haste and confusion. The trial court specifically found, however, that Hayes never received that letter. The court's findings further establish that "[t]his is not a situation in which a plea offer was made, discussed and accepted at the last minute." The court noted that Hayes had discussed the terms of the plea agreement on multiple occasions beginning in November 2004 and continuing through 30 March 2005, the day before the entry of defendant's guilty plea. The multiple discussions and review of the plea bargain over several months indicate the absence of haste or coercion in defendant's original decision to plead guilty.

---

3. Although this case was originally designated a capital case requiring the appointment of two attorneys to represent defendant, when the plea arrangement was accepted, the case became non-capital, and Mr. Driver was relieved of his responsibilities.

We agree with the trial court that given the factors set out in *Handy*, defendant did not present a fair and just reason to allow him to withdraw his guilty plea. We also agree that the State sufficiently demonstrated that its case would be prejudiced if defendant were allowed to withdraw his guilty plea as all the co-defendants had already been sentenced and thus could not be relied upon to testify against defendant at trial. Defendant, however, contends that there is no "colorable claim of prejudice" since "the state could simply recall attorney Hayes to testify again in front of a jury." While Hayes' testimony may have been admissible in connection with defendant's motion to withdraw his guilty plea, that does not mean it necessarily would be admissible in a trial on the merits of the burglary and murder charges against defendant, especially given Fifth Amendment concerns. Accordingly, we conclude that the court did not err in denying defendant's motion to withdraw his guilty plea.

III

[3] Defendant's final argument is that the trial court erred in calculating his prior record level. Defendant was convicted of the sale of cocaine on 24 July 1997. At the time of that conviction, the offense was a Class H felony. When, however, defendant was sentenced for the current offenses, the sale of cocaine had become a Class G felony. *See* N.C. Gen. Stat. § 90-95(b)(1) (2007) (providing that sale of a Schedule I substance, such as cocaine, constitutes a Class G felony). For purposes of calculating defendant's prior record level, the trial court treated the sale of cocaine conviction as a Class G felony, resulting in defendant's being a Level IV offender rather than a Level III offender.

In his brief, defendant acknowledges that N.C. Gen. Stat. § 15A-1340.14(c) (2007) states that when "determining the prior record level, the classification of a prior offense is the classification assigned to that offense at the time the offense for which the offender is being sentenced is committed." Defendant contends, however, that in order to prevent unconstitutional *ex post facto* application of the statute, it must be construed liberally in his favor such that he is entitled to be re-sentenced as a Level III offender.

Defendant is correct that " '[c]riminal statutes are to be strictly construed against the State.' " *State v. Hearst*, 356 N.C. 132, 136, 567 S.E.2d 124, 128 (2002) (quoting *State v. Raines*, 319 N.C. 258, 263, 354 S.E.2d 486, 489 (1987)). Nevertheless, "[i]f the statutory language is clear and unambiguous, the court eschews statutory construction in

favor of giving the words their plain and definite meaning." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005). Judicial construction is appropriate only when the statute is ambiguous. *Id.* Defendant points to no ambiguity in N.C. Gen. Stat. § 15A-1340.14(c), and we find none. Thus, the plain language of the statute controls, and there is nothing to construe.

As for defendant's *ex post facto* argument, "an impermissible *ex post facto* law is one which, among other things, aggravates a crime or makes it a greater crime than when committed, or changes the punishment of a crime to make the punishment greater than the law permitted when the crime was committed." *State v. Mason*, 126 N.C. App. 318, 324, 484 S.E.2d 818, 821 (1997), *cert. denied*, 354 N.C. 72, 553 S.E.2d 208 (2001). Because defendant's increased sentence due to the change in the classification of his prior conviction serves only to enhance his punishment for the present offenses—the 15 December 2003 burglary and murder—and not to punish defendant for his prior conviction, the constitutional prohibition on *ex post facto* laws is not implicated by application of N.C. Gen. Stat. § 15A-1340.14(c). *See State v. Wolfe*, 157 N.C. App. 22, 37, 577 S.E.2d 655, 665 (concluding use of prior conviction, originally a class F felony but currently a class D felony, to establish violent habitual felon status did not violate *ex post facto* clause as punishment for prior conviction was not increased), *appeal dismissed and disc. review denied*, 357 N.C. 255, 583 S.E.2d 289 (2003); *Mason*, 126 N.C. App. at 323-24, 484 S.E.2d at 821 (holding *ex post facto* prohibition not violated when "the crimes of assault with a deadly weapon inflicting serious injury and voluntary manslaughter were Class H and F felonies respectively at the time of commission, [but were] treat[ed] . . . as Class E felonies for establishing violent habitual offender status" under N.C. Gen. Stat. § 14-7.7 (2007)). Accordingly, we find no error in defendant's sentence.

Affirmed.

Judges WYNN and CALABRIA concur.