An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-277

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

    v.

JAVIER FLORES GAYTAN

Guilford County
No. 13 CRS 71032

Appeal by Defendant from judgments entered 23 September 2013 by Judge R. Stuart Albright in Superior Court, Guilford County. Heard in the Court of Appeals 26 August 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Staci Meyer, for the State.*
>
> *Marilyn G. Ozer for Defendant.*

McGEE, Chief Judge.

## I. Facts

In an effort to receive more favorable sentencing on three felony drug charges, Fidel Salazar Rangel ("Rangel") agreed to cooperate with Greensboro police as part of a plea deal. Rangel provided information and assistance — in cases unrelated to the present case — that led to multiple arrests and seizures of illegal narcotics. As part of his plea agreement, and relevant

to this appeal, Rangel contacted Jose Gonzalez-Franco ("Gonzalez-Franco") to arrange the purchase of one kilogram of cocaine. Gonzalez-Franco agreed to meet Rangel in the parking lot of a Hooters restaurant ("the restaurant") on High Point Road, outside Greensboro. Detectives from the Greensboro Police Department prepared to monitor the transaction.

Rangel was outfitted with a hidden audio recording device. Detective Carlos Monge ("Detective Monge") was assigned to monitor the recording in real time because he spoke both Spanish and English, and the police thought the transaction would likely involve Spanish. Other detectives took positions near the restaurant. Rangel, who was waiting in the restaurant parking lot, observed Gonzalez-Franco arrive in a pickup truck ("the truck") with two other men, and Rangel relayed this information to the detectives. Gonzalez-Franco left the truck and approached Rangel. After a short period of time, the two other men left the truck and joined Rangel and Gonzalez-Franco. These two men were later identified as Javier Flores Gaytan ("Defendant") and his brother Agustin Gaytan. All four men then entered the restaurant, where they remained for approximately fifteen minutes.

When the four men exited the restaurant, Defendant, Gonzalez-Franco, and Agustin Gaytan returned to the truck.

Agustin Gaytan entered the truck, and Defendant removed a brown bag ("the bag") from the truck. Defendant and Gonzalez-Franco then walked to Rangel's vehicle, where Defendant entered the back seat and Gonzalez-Franco entered the front passenger side seat. Rangel was sitting in the driver's seat. Defendant, who had the bag with him in the back seat, removed the cocaine from the bag for Rangel to see. Detective Monge, who was monitoring the conversation in Rangel's vehicle, alerted the other detectives that the cocaine was in Rangel's vehicle. The detectives then arrested Defendant, along with the other men involved. Approximately one kilogram of cocaine was recovered from the back seat of Rangel's vehicle where Defendant had been sitting.

Defendant was indicted for one count each of trafficking in cocaine by possession, trafficking in cocaine by transportation, and conspiracy to traffic in cocaine. Gonzalez-Franco pleaded guilty to trafficking in cocaine by possession, trafficking in cocaine by transportation, and conspiracy to traffic in cocaine. Gonzalez-Franco was sentenced to consolidated active sentences of 175 months to 222 months for each charge. As part of Rangel's plea agreement, he testified for the State at Defendant's trial. The jury found Defendant not guilty of the conspiracy charge, but guilty of trafficking in cocaine by

possession and trafficking in cocaine by transportation. The trial court sentenced Defendant to two consecutive active sentences of 175 months to 222 months. Defendant appeals.

## II. The Issues

Defendant argues the trial court erred in allowing: (1) the State to improperly argue that Rangel was going to receive an active sentence when he only received probation, (2) Detective Monge to translate the audio recording that was made during the drug transaction, (3) the State to ask questions implicating attorney-client privilege, and (4) a State's witness to refer to Defendant and the others as "bad guys." Defendant further argues the trial court erred by (5) sentencing Defendant in an inappropriately harsh manner. We hold that Defendant fails to prove that any prejudicial error occurred at trial.

## III. Closing Remarks

In Defendant's first argument, he contends that the trial court erred by failing to intervene *ex mero motu* to address an improper argument made by the State in its closing remarks. We disagree.

Defendant did not object to the portion of the State's argument he now contends was improper.

> When defendant fails to object to an argument, this Court must determine if the argument was "so grossly improper that the trial court erred in failing to intervene *ex*

*mero motu.*"

> In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Walters*, 357 N.C. 68, 101-02, 588 S.E.2d 344, 364 (2003) (citations omitted).

The State made the following statements in its closing argument, the highlighted portions of which Defendant includes in his brief:

> Our legislature enacted the trafficking statutes and the mandatory sentences, coupled with harsh fines, to deter drug trafficking networks.
> "Yet, at the same time, our legislature recognized that the system of mandatory sentences . . . is not alone sufficient to 'deter the corrupting influence of drug dealers and traffickers.' The nature of the crime – 'the mischief to be remedied' – dictates the methods used[.] To effectively combat trafficking, police authorities need information on, and access to, the myriad of drug-dealing activities in the various networks. Built into the [drug] trafficking statutes is a bargaining tool, 90-95(h)(5), a provision exchanging potential leniency for assistance from those who have easy access to drug networks."

The prospect of leniency is clearly calculated to provide a strong incentive to drug violators to cooperate with law enforcement officers and become informers.

**The raw truth is this. Fidel Rangel, like [Defendant], is a drug dealer, and should be treated accordingly.** If law enforcement officers could on their own arrange for the delivery of these drugs without the likes of a cooperating Fidel Rangel, they would. If these matters could be tried without the likes of a charged and admitted drug dealer taking the witness stand, they would. But the reality is, this is a secret, this is a clandestine criminal enterprise. All this talk of county surveillance and trying to conduct this business in such a way that they might be concealed from those that would be interested in their activities is such, ladies and gentlemen, we need – **we need – the likes of those with easy access to identify and, ultimately through their cooperation, sometimes testify against those individuals. Mr. Rangel is one of those individuals with easy access.**

**He will be punished. He will receive a sentence appropriate, given his level of involvement, in his own case on balance with the cooperation that he involved himself in subsequent to that.**

**But <u>he is an admitted drug dealer. And he will be dealt with accordingly.</u>** (Emphasis added).

Defendant argues that the underlined portion of the closing argument above "[s]uggest[ed] to the jury that Rangel would face substantial prison time as a drug dealer" and was therefore "grossly improper[.]"

Defendant first complains of multiple statements made by the State "throughout the trial" that suggested Rangel "would

still be sentenced to significant time in prison." However, Defendant did not object to any of these statements at trial, and does not now argue that any of these statements amount to plain error. Defendant has therefore failed to preserve any argument that these statements constituted error. *State v. Haselden*, 357 N.C. 1, 17, 577 S.E.2d 594, 604-05 (2003) (for issues dealing with evidence or jury instruction, failure to object at trial and failure to assign plain error on appeal constitutes abandonment of issue for appellate review).

When read in context, we do not find the State's comment that, as an admitted drug dealer, Rangel would be "dealt with" to have been grossly improper. This statement was, in fact, true. Defendant argues that the statement was grossly improper because the State did not advise the jury that Rangel might receive probation instead of an active prison sentence. However, Defendant had a full opportunity to bring forth this issue at trial, but failed to do so. Defendant cross-examined Rangel, in part, as follows:

> Q All of your cooperation since your arrest has been to benefit you at sentencing; isn't that right?
>
> A Yes, sir.
>
> Q And you're hoping, by your cooperation, that you get a sentence less than 175 to 222 months per drug trafficking count; isn't that correct?

A Yes, sir.

Q And you know that you're not in a position for law enforcement to talk to the sentencing judge about your cooperation unless you produce seizures, correct?

A Yes, sir.

Q And you will do what you need to do to make sure that you can produce those seizures and those convictions; isn't that right?

A Yes, sir.

Q Even if it means dealing with these people and not telling law enforcement about it; isn't that correct?

A No, sir. I don't do anything without keeping them posted.

Q When it's to your advantage, isn't that correct?

A No, sir. Nothing is to my advantage at this point. I lost everything. I lost my job. I lost everything.

Defendant thoroughly attacked Rangel's credibility by exposing Rangel's motivation to provide testimony on behalf of the State in exchange for the State's advocating on Rangel's behalf for a reduced sentence. It was the province of the jury to decide which part, if any, of Rangel's testimony to believe. Defendant fails to show that the trial court should have stepped in *ex mero motu* to address the challenged argument of the State, or that Defendant was prejudiced, assuming *arguendo* the State's

argument was improper. *Walters*, 357 N.C. at 101-02, 588 S.E.2d at 364; *State v. Jones*, 355 N.C. 117, 134, 558 S.E.2d 97, 108 (2002).

In addition, Defendant states in his brief: "If the jurors had known that Rangel understood that the right testimony could equate to a get out of jail free card, it would have greatly lessened his credibility." However, Defendant provided no evidence that Rangel actually "understood" that he might receive only probation and would not have to serve any active sentence. If Rangel did not know probation was a possibility, and we find no record evidence that he did know this when he testified, this information could not have impacted his testimony, nor have provided any additional motivation for him to testify untruthfully. In short, if Rangel did not know that helping the State might allow him to avoid an active sentence altogether, this fact was irrelevant to his credibility as a witness. It was Defendant's duty to present evidence at trial that Rangel *knew* probation was a possibility in order to establish the relevance of this information and preserve this issue for appeal. This argument is without merit.

### IV.  *State's Witness as Translator*

In Defendant's second argument, he contends that the trial court committed plain error in "allowing one of the

participating officers to translate and then relate to the jurors what [that officer] thought was captured by the wire on the confidential informant." We disagree.

Defendant contends that Detective Monge, who was involved in the operation leading to Defendant's arrest on the current charges, was allowed to improperly translate an audio recording made from a recording device Rangel was carrying at the time of the drug transaction.

We do not address Defendant's argument because Defendant has failed to properly argue plain error. In order to prevail in a plain error argument, Defendant must show that "absent the error, the jury probably would have returned a different verdict." *State v. Lawrence*, 365 N.C. 506, 519, 723 S.E.2d 326, 335 (2012). Defendant argues: "The jury may well have acquitted [Defendant] . . . if they had heard the wire translated by an unbiased interpreter." Defendant fails to properly argue plain error, much less meet his burden of proving that "absent the error, the jury probably would have returned a different verdict." *Id*. This argument is without merit.

Defendant also seeks to preserve his right to file a motion for appropriate relief in the trial court to argue ineffective assistance of counsel based upon his attorney's failure "to request the wire be translated by an AOC certified interpreter."

Nothing in this opinion should be interpreted as denying Defendant his right to file any legitimate motion for appropriate relief.

### V. Attorney-Client Privilege

In Defendant's third argument, he contends the trial court "erred by allowing the State to ask questions implicating attorney-client privilege." We disagree.

During Defendant's testimony, the State asked Defendant: "And you've had an opportunity to listen to the audiotape of the conversation that took place inside the car, have you not?" Defendant's attorney asked to approach the bench, and apparently asked to discuss the issue outside the presence of the jury. On *voir dire*, Defendant's attorney stated: "Judge, concerning [the State's] question about listening to the audiotape of the 6th, [Defendant] has not listened to that. Because he is in custody, trying to get the CD with a computer to him, he has not listened to it." Defendant objected to the State's question and stated: "The basis of the objection is that the answer potentially could disclose attorney work product." Defendant's attorney did not request time for Defendant to listen to the recording. The State then indicated it was prepared to "move on," meaning not to pursue questioning as to whether Defendant had listened to

the recording. The trial court responded: "If you're going to move on, it will be moot anyway."

Defendant contends that the State continued to "ask questions from [Detective] Monge's testimony concerning what he heard on the [recording.]" However, the State did not again ask Defendant if he had listened to the tape. The State cross-examined Defendant about what transpired in Rangel's vehicle, and what Defendant said while Defendant was in Rangel's vehicle. Defendant answered those questions. Defendant now argues the State should have been prevented from asking Defendant questions based upon evidence that was presented at trial because Defendant's answers might somehow implicate attorney-client privilege.

Initially, we note that Defendant objected at trial on the basis that answers Defendant might have given "potentially could disclose attorney work product." The work product doctrine and attorney-client privilege are separate issues. *See Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 31, 541 S.E.2d 782, 790 (2001). Because Defendant failed to object at trial on the basis of attorney-client privilege, he has failed to preserve this issue for appellate review. *State v. Gibbs*, 335 N.C. 1, 49, 436 S.E.2d 321, 349 (1993).

Assuming *arguendo* Defendant had preserved this argument, Defendant did not indicate at trial what privileged information might be compromised if Defendant had informed the jury that he had not listened to the recording because his attorney had not provided it to him, and Defendant does not now indicate what privileged information might be implicated, or how it would have prejudiced him. Defendant fails to demonstrate that any privileged communications were implicated in this matter. *State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981) (citations omitted) ("A privilege exists if (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege."). Having failed to identify any particular communication alleged to have been privileged, Defendant automatically fails in four of the five prongs of the test enumerated in *Murvin*.

Finally, Defendant has made no argument in his brief in support of his bald statement that he was prejudiced by any error. *State v. Watkins*, 195 N.C. App. 215, 222, 672 S.E.2d 43,

48 (2009) (citation omitted) ("The person asserting the privilege bears the burden of establishing each of the five elements."). This argument is without merit.

### VI. Reference to Defendant as a "Bad Guy"

In Defendant's fourth argument, he contends that the trial court committed plain error by allowing Detective Monge "to repeatedly refer to the defendants as 'the bad guys.'" We disagree.

Detective Monge referred to the three men involved in the transaction with Rangel multiple times as "the bad guys." Defendant never objected to this characterization. Defendant again fails to make a proper plain error argument. Defendant states:

> Standing alone these references to [D]efendant's guilty [sic] may not have swayed the jury, but when viewed in the context of Monge's entire testimony in which he was allowed to translate and paraphrase everything that went on during the meeting, his clear opinion that Gaytan was guilty raises a reasonable probability that without his characterization the jury would have returned a different verdict.

However, we do not "apply the plain error doctrine on a cumulative basis when defendant is assigning error to unrelated admissions of evidence to which he did not object, and the trial court made no affirmative ruling on the admissibility of any of them." *State v. Holbrook*, 137 N.C. App. 766, 769, 529 S.E.2d

510, 512 (2000). Because Defendant admits that Detective Monge's use of the term "bad guys" might not have amounted to plain error absent Detective Monge's unobjected to testimony in which Defendant argued Detective Monge improperly served as a translator, Defendant has not alleged or properly argued plain error. Further, we agree with Defendant that Detective Monge's use of the term "bad guys" standing alone, as it must in plain error review, *id.*, does not rise to the level of plain error. This argument is without merit.

### VII. *Appropriateness of Sentence*

In Defendant's final argument, he contends that "sentencing Defendant to thirty to thirty-seven years in prison when the same court sentenced his co-defendant to half that time was clearly and palpably gross, harsh and abusive." We disagree.

Defendant makes this argument based upon the fact that his co-defendant, Gonzalez-Franco, received concurrent sentences after pleading guilty, but the trial court sentenced Defendant to consecutive sentences, effectively sentencing Defendant to twice the active sentence of Gonzalez-Franco. However, this Court has held:

> Nor did the court err by sentencing defendant to a greater sentence than that received by [his co-defendant] pursuant to a plea bargain. *See, e.g., State v. Garris*, 265 N.C. 711, 712, 144 S.E.2d 901, 902 (1965) ("There is no requirement of law that

defendants charged with similar offenses be given the same punishment."); *State v. Sligh*, 27 N.C. App. 668, 669, 219 S.E.2d 801, 802 (1975) (court did not err by "imposing a sentence against defendant which was greatly in excess of the sentence given his codefendant . . . under [his] plea bargaining arrangement").

*State v. Shelman*, 159 N.C. App. 300, 312, 584 S.E.2d 88, 96-97 (2003). This Court has held that sentences falling within the statutory guidelines will only be reviewed if it is readily discernable that the sentence is clearly harsh or abusive:

> "[S]o long as the punishment rendered is within the maximum provided by law, an appellate court *must* assume that the trial judge acted fairly, reasonably and impartially in the performance of his office." Moreover when the sentence imposed is ". . . within statutory limits . . . [it] cannot be considered excessive, cruel or unreasonable." Thus, ". . . sentences imposed, which are within the limits provided by law, are beyond our review." Notwithstanding the principle that such sentences are nonreviewable, appellate courts have reviewed sentences when the particular sanction imposed is clearly and palpably gross, harsh and abusive. Only when such an abuse of discretion is readily discernible will appellate courts intercede. The defendant, attacking a sentence, however, is confronted by the presumption that the trial judge acted ". . . fairly, reasonably, and impartially in the performance of the duties of his office. . . . Our entire judicial system is based upon the faith that a judge will keep his oath. 'Unless the contrary is made to appear, it will be presumed that judicial acts and duties have been duly and regularly performed.' . . . So long as errants make

it necessary for other men to judge them it is best to indulge the presumption that a judge will do what a judge ought to do."

*State v. Harris*, 27 N.C. App. 385, 386-87, 219 S.E.2d 306, 307 (1975) (citations omitted). Defendant was convicted of trafficking in 400 grams or more of cocaine by possession, and trafficking in 400 grams or more of cocaine by transporting. N.C. Gen. Stat. § 90-95 states:

> (3) Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine . . . shall be guilty of a felony, which felony shall be known as "trafficking in cocaine" and if the quantity of such substance or mixture involved:
>
> . . . .
>
> c. Is 400 grams or more, such person shall be punished as a Class D felon and shall be sentenced to a minimum term of 175 months and a maximum term of 222 months in the State's prison and shall be fined at least two hundred fifty thousand dollars ($250,000).

N.C. Gen. Stat. § 90-95(h)(3)(c.) (2013). The trial court sentenced Defendant to consecutive active sentences of 175 months to 222 months, which is the statutory range for the offenses for which Defendant was convicted. We hold these sentences are nonreviewable, as they are not "clearly and palpably gross, harsh [or] abusive[,]" and no "abuse of discretion is readily discernible[.]" *Harris*, 27 N.C. App. at

386, 219 S.E.2d at 307 (citations omitted).  This argument is without merit.

No error.

Judges BRYANT and STROUD concur.

Report per Rule 30(e).