ENOCHS, Judge.
 

 *122
 
 Ottis McGill ("Defendant") appeals from the trial court's order denying his motion to withdraw his guilty plea and his convictions for two counts of common law robbery and attaining the status of an habitual felon. On appeal, he contends that the trial court erred in denying his motion to withdraw his guilty plea and erred in finding that a sufficient factual basis existed for accepting his guilty plea. After careful review, we affirm the trial court's order denying Defendant's motion to withdraw his guilty plea and find no error.
 

 Factual Background
 

 On 21 August 2013, Defendant entered a Western Union in Wilmington, North Carolina and demanded money from Calethea Smith ("Smith") who was working at the front counter. Smith gave Defendant
 
 *123
 
 approximately $6,403.00 and Defendant fled the premises. The entire exchange between Defendant and Smith was captured on audio and video surveillance.
 

 Several days later on 6 September 2013, Defendant entered New Bridge Bank in Wilmington and demanded that James Taylor ("Taylor") and Lynn Creech ("Creech")-who
 
 *704
 
 were working as tellers at the bank at the time-give him all of the money in their cash drawers. Taylor and Creech complied and gave Defendant approximately $2,250.00. Defendant then fled.
 

 Detectives David Timken ("Detective Timken") and K.J. Tully ("Detective Tully") with the Wilmington Police Department were assigned to investigate the robberies. They consulted with Jeff Martens with the U.S. Marshal Task Force, who informed them that he had been looking for Defendant whom he believed was in the Wilmington area and could have perpetrated the robberies. The detectives obtained a photograph of Defendant, and Detective Timken included Defendant's picture in photographic lineups he administered to Smith, Taylor, and Creech, all of whom positively identified Defendant as the man who had committed the robberies. Defendant was subsequently located and arrested.
 

 On 23 June 2014, Defendant was indicted on two counts of common law robbery and obtaining the status of an habitual felon. Shortly thereafter, the State offered him a plea agreement that would have required him to plead guilty to these charges in exchange for concurrent-as opposed to consecutive-prison sentences.
 

 Defendant declined this plea agreement and trial was scheduled for 30 March 2015. Prior to trial, Defendant moved to suppress the results of the photographic lineups. The trial court denied this motion.
 

 On 30 March 2015, Defendant's case was called for trial before the Honorable Phyllis M. Gorham in New Hanover County Superior Court. Shortly after the jury was empaneled, however, Defendant informed the trial court that he did, in fact, want to enter into a plea deal with the State.
 

 After a discussion with his attorney and the State during a recess in the proceedings, Defendant informed the trial court that he wished to plead guilty to the charges against him and proceeded to do so, signing a transcript of plea. In exchange for his guilty plea, Defendant received a prayer for judgment continued-seemingly so he could provide the State with information he possessed concerning an unrelated criminal case in exchange for a potentially more lenient prison sentence.
 

 *124
 
 During the time period following the entry of his guilty plea and prior to sentencing, Defendant engaged in several interviews with the State concerning the unrelated criminal matter. The State ultimately determined not to use Defendant as a witness in that case, however, and declined to recommend a reduction of his sentence to the trial court.
 

 On 9 April 2015, Defendant filed a
 
 pro se
 
 motion for appropriate relief wherein he requested to withdraw his guilty plea on the ground that his trial counsel had erroneously informed him that if he entered into the guilty plea his sentence would run concurrently with sentences he was set to receive in connection with unrelated criminal convictions in Robeson and Bladen Counties. He further alleged the existence of an undefined conspiracy amongst court appointed attorneys generally to trick their clients into taking unfavorable plea bargains, stating that "[t]his manner of dispensing with criminal cases has become so profound that many lawyers of the Public Defenders [sic] Office and Court appointed Attorney's [sic] have little to no actual trial experience. Rather, these lawyers trick, manipulate and threateningly coerce defendants to enter guilty plea [sic]. Such a conspiracy has taken place in this case."
 

 On 20 April 2015, Defendant was appointed counsel to represent him regarding his motion for appropriate relief. On 24 August 2015, Defendant's newly appointed counsel filed an amended motion for appropriate relief stating that "Defendant asserts his intention to withdraw his plea, but under a Motion to Withdraw a Guilty Plea and not under a Motion for Appropriate Relief."
 

 On 17 and 22 September 2015, an evidentiary hearing was held on Defendant's motion before the Honorable W. Allen Cobb, Jr. in New Hanover County Superior Court. On 6 October 2015, Judge Cobb entered an order concluding that based on the evidence presented, Defendant's motion to withdraw his guilty plea should be denied.
 

 *705
 
 That same day, a sentencing hearing was held before Judge Cobb who sentenced Defendant to two consecutive sentences of 117 to 153 months imprisonment. At the conclusion of the hearing, Defendant's trial counsel attempted to enter oral notice of appeal on Defendant's behalf but was repeatedly interrupted by Defendant in the following exchange:
 

 THE COURT: Anything further, Mr. Moore?
 

 MR. MOORE: Judge, Mr. McGill would give notice-
 

 THE DEFENDANT: No, no, I would like to file a motion for appropriate relief.
 

 *125
 
 MR. MOORE: Okay. He would like to give-
 

 THE DEFENDANT: No, no, no, Your Honor, excuse me. I would like to file these motions for appropriate relief. I have already wrote the State Bar on Mr. Moore and that was a couple-that was a while back, you know, and I already done wrote another letter, you know, I've been writing Mr. Moore constantly.
 

 THE COURT: Let the record reflect that the Court, based on the representations of his lawyer, enters notice of appeal to the North Carolina Court of Appeals. The Court appoints the Appellate Defender to perfect his appeal. There will be no appeal bond and if in fact the Court of Appeals affirms anything that may have been done here, then he is free to file any appropriate motion for appropriate relief.
 

 He'll be in your custody, Mr. Sheriff.
 

 THE DEFENDANT: Your Honor, I would like to file this motion for appropriate relief, sir. So you're denying me the right to file the motion?
 

 THE COURT: I don't have the jurisdiction over it. He's in your custody, Mr. Sheriff.
 

 THE DEFENDANT: Okay, is this being documented?
 

 Just deny me a right, my constitutional right to file this motion and you told them to put me down for appeal when I didn't want an appeal at this point in time. I ask you to take the motion.
 

 On 30 March 2016 and 2 May 2016, Defendant filed petitions for writ of
 
 certiorari
 
 with this Court due to his failure to adequately provide notice of his intent to appeal pursuant to Rule 4 of the North Carolina Rules of Appellate Procedure. On 1 June 2016, the State filed a motion to dismiss Defendant's appeal.
 

 Analysis
 

 I.
 
 Appellate Jurisdiction
 

 As an initial matter, we must address the issue of whether appellate jurisdiction exists over Defendant's appeal.
 

 *126
 
 Rule 4 of the North Carolina Rules of Appellate Procedure provides that a defendant may appeal from an order or judgment in a criminal action by (1) "giving oral notice of appeal at trial," or (2) "filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment[.]"
 

 State v. Holanek
 
 , --- N.C.App. ----, ----,
 
 776 S.E.2d 225
 
 , 231 (quoting N.C.R. App. P. 4),
 
 disc. review denied
 
 ,
 
 368 N.C. 429
 
 ,
 
 778 S.E.2d 95
 
 (2015),
 
 cert. denied
 
 , --- U.S. ----,
 
 136 S.Ct. 2493
 
 ,
 
 195 L.Ed.2d 824
 
 (2016). Where a defendant fails to adequately provide notice of appeal, his appeal is subject to dismissal. However, we may still address the merits of a defective appeal pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure where the defendant files a petition for writ of
 
 certiorari
 
 .
 
 See
 
 N.C.R. App. P. 21(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]").
 

 Here, Defendant stated during the sentencing hearing that he did not want to appeal his convictions. Nor did he file written notice of appeal within 14 days after his sentence was imposed in accordance with Rule 4. Consequently, we agree with the State that Defendant's notice of appeal is not timely and grant its motion to dismiss Defendant's appeal.
 
 See
 

 State v. Cottrell
 
 ,
 
 234 N.C.App. 736
 
 , 740,
 
 760 S.E.2d 274
 
 , 277-78 (2014) (granting state's motion to dismiss
 
 *706
 
 defendant's appeal due to improper notice of appeal, but nevertheless reaching merits of appeal pursuant to Rule 21 upon defendant's filing of petition for writ of
 
 certiorari
 
 ).
 

 However, on 30 March 2016 and 2 May 2016, Defendant filed petitions for writ of
 
 certiorari
 
 with this Court seeking appellate review of (1) the denial of his motion to withdraw his guilty plea; and (2) whether a sufficient factual basis existed to allow the trial court to accept his guilty plea. The State has failed to cite any cases precluding our issuing of a writ of
 
 certiorari
 
 under the circumstances of this case, and we are not aware of any.
 

 Indeed, to the contrary, N.C. Gen. Stat. § 15A-1444(e) (2015) states, in pertinent part, that
 

 [e]xcept as provided in subsections (a1) and (a2) of this section and G.S. 15A-979, and
 
 except when a motion to withdraw a plea of guilty or no contest has been denied
 
 , the defendant is not entitled to appellate review as a
 
 *127
 
 matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari.
 

 (Emphasis added). Therefore, it is within our discretionary authority under the factual circumstances of the present case as to whether a writ of
 
 certiorari
 
 as to Defendant's petitions should issue. We elect to do so here and grant Defendant's petitions in order to reach the merits of his appeal.
 
 [1]
 

 II.
 
 Motion to Withdraw Guilty Plea
 

 Defendant first argues on appeal that the trial court erred by denying his motion to withdraw his guilty plea. Specifically, he contends that his trial counsel provided incomplete or erroneous advice concerning habitual felon sentencing which resulted in his misunderstanding the consequences of his guilty plea and also conspired with the State for the purpose of "tricking" him into pleading guilty. We disagree.
 

 In reviewing a decision of the trial court to deny defendant's motion to withdraw, the appellate court does not apply an abuse of discretion standard, but instead makes an independent review of the record. That is, the appellate court must itself determine, considering the reasons given by the defendant and any prejudice to the State, if it would be fair and just to allow the motion to withdraw.
 

 State v. Marshburn
 
 ,
 
 109 N.C.App. 105
 
 , 108,
 
 425 S.E.2d 715
 
 , 718 (1993) (internal citation and quotation marks omitted).
 

 Our Supreme Court has held that "a presentence motion to withdraw a plea of guilty should be allowed for any fair and just reason."
 
 State v. Handy
 
 ,
 
 326 N.C. 532
 
 , 539,
 
 391 S.E.2d 159
 
 , 162 (1990) ;
 
 State v. Meyer
 
 ,
 
 330 N.C. 738
 
 , 742-43,
 
 412 S.E.2d 339
 
 , 342 (1992) ("Although there is no absolute right to withdraw a guilty plea, withdrawal motions made prior to sentencing, and especially at a very early stage of the proceedings, should be granted with liberality." (internal quotation marks omitted)).
 

 *128
 
 It is well settled that
 

 [t]he defendant has the burden of showing that his motion to withdraw is supported by some fair and just reason. Whether the reason is fair and just requires a consideration of a variety of factors. Factors which support a determination that the reason is fair and just include: [1] the defendant's assertion of legal innocence; [2] the weakness of the State's case; [3] a short length of time between the entry of the guilty plea and the motion to withdraw; [4] that the defendant did not have competent counsel at all times; [5] that the defendant did not understand the consequences of the guilty plea; and [6] that the plea was entered in haste, under coercion or at a time when the defendant was confused. If the defendant meets his burden, the court
 
 *707
 
 must then consider any substantial prejudice to the State caused by the withdrawal of the plea.
 

 Marshburn
 
 ,
 
 109 N.C.App. at 108
 
 ,
 
 425 S.E.2d at 717-18
 
 (internal citations and quotation marks omitted). These factors were first enumerated in
 
 Meyer
 
 and have subsequently been applied by our appellate courts in determining whether the denial of a defendant's motion to withdraw his guilty plea was proper. However, our Supreme Court in
 
 Meyer
 
 also emphasized that the State need not even demonstrate on appeal that a reversal of the trial court's denial of a defendant's motion to withdraw his guilty plea would cause it to suffer substantial prejudice "until the defendant has asserted a fair and just reason why he should be permitted to withdraw his guilty pleas."
 
 330 N.C. at 744
 
 ,
 
 412 S.E.2d at 343
 
 . We address each of the
 
 Meyer
 
 factors in turn.
 

 A.
 
 Defendant's Assertion of Legal Innocence
 

 In the present case, Defendant's motion to withdraw his guilty plea was not based upon his assertion of legal innocence. Instead, as noted above, Defendant merely alleged that his attorney misled him by incorrectly explaining the law to him as it pertains to habitual felon sentencing and that she conspired with the State to "trick" him into accepting a guilty plea.
 

 Significantly, our research has failed to produce a single case in which our appellate courts have found that the trial court erred in denying a defendant's motion to withdraw his guilty plea where the defendant did not, as a ground for his motion, assert his legal innocence.
 
 See, e.g.
 
 ,
 
 State v. Chery
 
 ,
 
 203 N.C.App. 310
 
 ,
 
 691 S.E.2d 40
 
 (2010) ;
 
 State v. Watkins
 
 ,
 
 195 N.C.App. 215
 
 ,
 
 672 S.E.2d 43
 
 (2009) ;
 

 *129
 

 State v. Villatoro
 
 ,
 
 193 N.C.App. 65
 
 ,
 
 666 S.E.2d 838
 
 (2008) ;
 
 State v. Graham
 
 ,
 
 122 N.C.App. 635
 
 ,
 
 471 S.E.2d 100
 
 (1996).
 

 Indeed, our Supreme Court expressly addressed the significant weight accorded this factor in
 
 Meyer
 
 :
 

 Perhaps most importantly, defendant in this case, unlike the defendant in
 
 Handy,
 
 has not asserted his "legal innocence." In
 
 Handy,
 
 the defendant pleaded guilty to felony murder based on the underlying charge of armed robbery. The following morning, the defendant told the trial judge that he had felt "under pressure" to plead guilty, and that after praying about it overnight and talking with his mother and attorneys, he believed he was not actually guilty of first-degree murder. In this case, defendant sought to withdraw his guilty pleas not because he believed he was innocent of the crimes charged, but because of the extensive media coverage generated by his escape.
 

 330 N.C. at 744
 
 ,
 
 412 S.E.2d at 343
 
 (internal citation omitted);
 
 see also
 

 Chery
 
 ,
 
 203 N.C.App. at 319
 
 ,
 
 691 S.E.2d at 47
 
 (holding where defendant did not assert his innocence and "[o]ur independent review of the record in this case reveal[ed] that the reason for defendant's motion to withdraw his plea was that his co-defendant ... was found not guilty of all charges" that "[t]he trial court properly denied defendant's motion to withdraw his plea"). Therefore, Defendant's failure to establish this factor as a reason why his motion to withdraw his guilty plea should have been granted weighs heavily against him under the
 
 Meyer
 
 analysis.
 

 B.
 
 Strength of the State's Case
 

 Defendant next argues that the State's case was weak and that, as a result, we should find the second
 
 Meyer
 
 factor weighs in his favor. Specifically, Defendant contends that the photographic lineup evidence forecast by the State was tainted pursuant to N.C. Gen. Stat. § 15A-284.52(a)(3) and (b)(1) (2015) given that Detective Timken-the officer who first interviewed the bank tellers-also administered the photographic lineups to them. Subsection (b)(1) of N.C. Gen. Stat. § 15A-284.52 provides that
 

 [l]ineups conducted by State, county, and other local law enforcement officers shall meet all of the following requirements:
 

 (1) A lineup shall be conducted by an independent administrator or by an alternative method as provided by subsection (c) of this section.
 

 *130
 
 Subsection (a)(3) defines an independent administrator as "[a] lineup administrator who is not participating in the investigation of the
 
 *708
 
 criminal offense and is unaware of which person in the lineup is the suspect."
 

 We first note that Defendant moved to suppress the photographic lineups evidence pursuant to the above statute during a pretrial motion. The motion was denied by the trial court and Defendant has not appealed the trial court's decision to allow the photographic lineups into evidence. Therefore, any argument as to its admissibility on appeal is deemed abandoned.
 
 See
 

 State v. Brown
 
 ,
 
 217 N.C.App. 566
 
 , 569,
 
 720 S.E.2d 446
 
 , 449 (2011) ("If a defendant does not give specific notice of his intent to appeal a motion to suppress, then the defendant has waived the right to appellate review.").
 

 Even assuming
 
 arguendo
 
 , however, that the photographic lineups had been suppressed and excluded from the State's evidence, we are still not convinced that the State's case would have been considered "weak." The State's forecast of evidence also included audio and video recordings of the Western Union robbery and additional witnesses present during the robberies who were prepared to testify that Defendant had been the perpetrator. As a result, we hold that Defendant has failed to sufficiently establish the second factor of the
 
 Meyer
 
 test.
 

 C.
 
 Timeliness of Motion
 

 Defendant next argues that his motion was filed within a short time after the entry of his guilty plea weighing in favor of a finding that he had had a "sudden change of heart" as to his guilty plea. We disagree.
 

 Our appellate courts have placed heavy reliance on the length of time between a defendant's entry of the guilty plea and motion to withdraw the plea. The reasoning behind this reliance was articulated in
 
 Handy:
 

 A swift change of heart is itself strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's legitimate interests. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.
 

 Chery
 
 ,
 
 203 N.C.App. at 317
 
 ,
 
 691 S.E.2d at 46
 
 (internal citation and quotation marks omitted) (quoting
 
 Handy
 
 ,
 
 326 N.C. at 539
 
 ,
 
 391 S.E.2d at
 
 163 ).
 

 *131
 
 It is undisputed that Defendant waited nine days to file his
 
 pro se
 
 motion to withdraw his guilty plea during which time he provided details to the State concerning an unrelated case in an attempt to obtain a reduction in his sentence. It was only after the State ultimately declined to offer him a reduction that he resolved to withdraw his guilty plea.
 

 This does not represent the type of sudden change of heart necessary to establish a fair and just reason that he should be allowed to withdraw his guilty plea. Nor does it reflect that Defendant was confused or entered his guilty plea in haste. Instead, it reflects a well thought out and calculated tactical decision on Defendant's part to attempt to obtain a more lenient sentence after his endeavor to receive a sentence reduction by cooperating with the State did not bear fruit.
 
 See
 

 id.
 
 at 318,
 
 691 S.E.2d at 46
 
 ("Although defendant's letter seeking to withdraw his plea was sent to Judge Jenkins only nine days after its entry, the facts of this case do not show that this desire was based upon a swift change of heart as contemplated by
 
 Handy
 
 . Defendant executed the plea transcript approximately three and a half months prior to the plea hearing. There is no indication in the record that during this time defendant wavered on this decision. It was only after [his co-defendant] was found not guilty of all charges did defendant decide that he wished to withdraw his plea." (internal quotation marks and brackets omitted)).
 

 Moreover, the terms of the plea deal itself were unambiguous. This Court has held that " '[i]n analyzing plea agreements, contract principles will be wholly dispositive because neither side should be able ... unilaterally to renege or seek modification simply because of uninduced mistake or change of mind.' "
 
 State v. Robinson
 
 ,
 
 177 N.C.App. 225
 
 , 231,
 
 628 S.E.2d 252
 
 , 256 (2006) (quoting
 
 State v. Lacey
 
 ,
 
 175 N.C.App. 370
 
 , 372,
 
 623 S.E.2d 351
 
 , 352-53 (2006) ). Defendant cannot, therefore,
 
 *709
 
 unilaterally undo the plea agreement because he no longer deems it advantageous based upon collateral matters.
 
 See
 

 Marshburn
 
 ,
 
 109 N.C.App. at 109
 
 ,
 
 425 S.E.2d at 718
 
 ("To be relevant, defendant must show that the misunderstanding related to the
 
 direct consequences
 
 of his plea, not a misunderstanding regarding the effect of the plea on some collateral matter.").
 

 Consequently, Defendant's deliberate tactical decision to wait to withdraw his guilty plea until after the State determined not to offer him a reduction in his sentence due to his cooperation in the unrelated criminal matter belies his assertion that he had a sudden change of heart of the type we have held to weigh in a defendant's favor under
 
 Meyer
 
 . As a result, we find this factor also does not weigh in his favor.
 

 *132
 
 D.
 
 Comprehension of Guilty Plea's Terms
 

 Defendant next contends that he was operating under a misapprehension of the law as it related to habitual felon sentencing due to his trial counsel's incorrect legal advice which he claims was intentionally provided pursuant to a broad, yet undefined, conspiracy that court appointed attorneys in North Carolina have entered into with the State in order to trick criminal defendants into entering into unfavorable guilty pleas. We find this assertion in Defendant's motion to withdraw his guilty plea inherently absurd, but nevertheless proceed to address whether he did, in fact, comprehend the terms of his guilty plea.
 

 Perhaps most fundamentally, we observe that despite Defendant's insistence that he was misled and misinformed in entering into his guilty plea, Defendant's trial counsel testified that prior to his doing so she fully informed him of the following:
 

 Q. Did you ever discuss with Mr. McGill the plea for 25 to 39 months to run consecutive if he gave information on the murder?
 

 A. I don't recall that. I know at some point there was discussion about getting his other charges in the other counties to run concurrent with this, and then I researched it and found out that you can't do that, because nothing can run concurrent, and other charges can't, if it's habitual, and relayed that to him.
 

 Q. So at some point, though, you told him that you thought they could run concurrent?
 

 A. Right. We talked about it and I researched it and told him that can't happen.
 

 Defendant also unequivocally stated during a colloquy with the trial court the following prior to entering into his guilty plea:
 

 THE COURT: Have the charges been explained to you by your lawyer?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Do you understand the nature of the charges?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Have you and your lawyer discussed the possible defenses to the charges?
 

 *133
 
 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Are you satisfied with your lawyer's services?
 

 THE DEFENDANT: Yes, ma'am.
 

 ....
 

 THE COURT: Do you understand that you are pleading guilty to two counts of common law robbery, each count being a Class C felony, each count punishable by up to 231 months, and habitual felon status for a total maximum punishment of 462 months in the custody of the North Carolina Department of Corrections?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Do you now personally plead guilty?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Are you in fact guilty?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Have you agreed to plead guilty as a part of a plea arrangement?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: The prosecutor and your lawyer have informed the Court of the following terms and conditions of your plea. That you will plead guilty to the charges listed above and receive a prayer for judgment continued.
 

 *710
 
 Is this correct as being your full plea arrangement?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Do you now personally accept this arrangement?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Other than the plea arrangement between you and the prosecutor, has anyone promised you anything or threatened you in any way to cause you to enter this plea against your wishes?
 

 THE DEFENDANT: No, ma'am.
 

 *134
 
 THE COURT: Do you enter this plea of your own free will?
 

 THE DEFENDANT: Yes, ma'am.
 

 THE COURT: Do you have any questions about what has just been said to you?
 

 THE DEFENDANT: No, ma'am.
 

 Based on the above-quoted exchanges, we are satisfied that the record plainly and unambiguously shows that Defendant was fully informed of the consequences of accepting his plea deal and did so both knowingly and voluntarily. Therefore, he has failed to establish this factor of the
 
 Meyer
 
 test as weighing in his favor as well.
 

 E.
 
 Ineffective Assistance of Counsel
 

 We next consider whether Defendant received effective assistance of counsel. As noted above, Defendant's trial counsel was fully prepared for trial and had fully advised and informed Defendant of the terms of the State's plea deal. She had also fully and accurately informed Defendant of the law as it pertained to habitual felon sentencing and the impossibility of receiving concurrent sentences with his convictions in other counties.
 

 Moreover, it was
 
 Defendant himself
 
 who insisted on entering into a guilty plea with the State after he was dissatisfied with the jurors who were selected to try him. This was evidenced through his trial counsel's testimony at the hearing on his motion to withdraw his guilty plea:
 

 Q. Did you feel that Mr. McGill was under pressure when he accepted the plea?
 

 A. I'm sure everyone who takes a plea is under pressure, but that was his decision. We talked about it thoroughly. I did not want him to take a plea, and that's what he wanted to do.
 

 Defendant's trial counsel was optimistic about trying the case and fully prepared to do so. Nevertheless, Defendant insisted on entering into a plea deal, most likely due to his belief that he could receive a sentence reduction if he cooperated with the State by providing information about the unrelated criminal matter. As a result, Defendant's trial counsel had no choice but to acquiesce to his desire to enter a plea of guilty.
 
 See
 

 State v. Grooms
 
 ,
 
 353 N.C. 50
 
 , 85,
 
 540 S.E.2d 713
 
 , 735 (2000) (" '[W]hen counsel and a fully informed criminal defendant client reach
 
 *135
 
 an absolute impasse as to such tactical decisions, the client's wishes must control; this rule is in accord with the principal-agent nature of the attorney-client relationship.' " (quoting
 
 State v. Ali
 
 ,
 
 329 N.C. 394
 
 , 404,
 
 407 S.E.2d 183
 
 , 189 (1991) )). Consequently, Defendant cannot demonstrate based on the record that he received ineffective assistance of counsel.
 

 F.
 
 Coercion, Haste, or Confusion
 

 Based on our above analysis, we are satisfied that Defendant was fully informed of the consequences of his decision to plead guilty and did so knowingly and voluntarily free from any coercive influence or material misrepresentation. There is also no evidence whatsoever of Defendant being forced into entering into the guilty plea in haste. Moreover, there is no evidence in the record that Defendant received ineffective assistance of counsel. Consequently, we hold that Defendant has failed to establish this
 
 Meyer
 
 factor as weighing in his favor as well.
 

 In summary, because Defendant has failed to establish any of the
 
 Meyer
 
 factors as weighing in his favor, we hold that the trial court did not err in denying his motion to withdraw his guilty plea. Defendant's arguments on this issue are overruled.
 

 III.
 
 Trial Court's Acceptance of Guilty Plea
 

 Defendant's final argument on appeal is that the trial court erred in accepting his guilty plea because there was not a sufficient factual basis to support his convictions. We disagree.
 

 *711
 
 Pursuant to N.C. Gen. Stat. § 15A-1022(c) (2011), a trial court may not accept a plea of guilty without first determining that there is a factual basis for the plea. This determination may be based upon information including, but not limited to, a statement of the facts by the prosecutor, a written statement of the defendant, an examination of the presentence report, sworn testimony, which may include reliable hearsay, or a statement of facts by the defense counsel. The five sources listed in the statute are not exclusive, and therefore the trial judge may consider any information properly brought to his attention.
 

 State v. Collins
 
 ,
 
 221 N.C.App. 604
 
 , 606,
 
 727 S.E.2d 922
 
 , 924 (2012) (internal citation, quotation marks, and ellipses omitted).
 

 Here, Defendant stipulated that a factual basis existed to support his guilty plea. He then stipulated to the State's summary of the factual basis which it proceeded to provide. After the State had entered its summary
 
 *136
 
 into the record at trial, the trial court asked Defendant if there were any additions or corrections to the account that he would like to make. Defendant responded in the negative.
 

 This procedure is sufficient to enable the trial court to find that a factual basis exists for Defendant's guilty plea.
 
 See
 

 id.
 
 at 607,
 
 727 S.E.2d at 925
 
 ("We conclude that the summary of the facts presented by the prosecutor and [d]efendant's stipulations are sufficient to establish a factual basis for [d]efendant's guilty plea."). Consequently, Defendant's argument on this issue is without merit.
 

 Conclusion
 

 For the reasons stated above, we affirm the trial court's order denying Defendant's motion to withdraw his guilty plea and find no error.
 

 AFFIRMED.
 

 Judges ELMORE and ZACHARY concur.
 

 [1]
 

 Moreover, though unnecessary to our determination on this jurisdictional issue, we note that despite the State's contentions to the contrary, we are inclined to agree with Defendant that a contextual reading of the transcript more accurately reflects that he was upset with the trial court's refusal to allow his motion for appropriate relief, as opposed to knowingly and intentionally abandoning any and all future right to appeal the denial of his motion to withdraw his guilty plea.